UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KEVIN FRISSORA,<br> *Plaintiff*, | )   3:23-CV-1506 (SVN)<br>)<br>) |
| v. | )<br>) |
| SMITH & NEPHEW, INC.,<br> *Defendant*. | )<br>)   December 13, 2024 |

### RULING AND ORDER ON MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

Plaintiff Kevin Frissora has brought this product liability action against Defendant Smith & Nephew, Inc., under the Connecticut Product Liability Act ("CPLA"), Conn Gen. Stat. § 52-572m, *et seq.* Plaintiff asserts three claims against Defendant in relation to Defendant's Journey Knee Replacement System: (1) manufacturing defect; (2) design defect; and (3) negligence.

Defendant now moves to dismiss all three claims for failure to state a claim upon which relief can be granted, arguing that Plaintiff has failed to sufficiently plead his claims under Federal Rules of Civil Procedure 8(a). Plaintiff opposes the motion, contending that he provided the requisite "short and plain statement" for each of his claims, and thus the motion to dismiss should be denied.

For the reasons set forth below, Defendant's motion is DENIED as to Plaintiff's manufacturing and design defect claims and GRANTED as to Plaintiff's negligence claim.

### I. FACTUAL BACKGROUND

The Court accepts the following allegations in Plaintiff's complaint as true for purposes of deciding Defendant's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The facts reflected in the amended complaint are brief. On April 22, 2009, Plaintiff underwent a bilateral knee replacement surgery performed by Dr. Michael Luchini at the Hospital

of St. Raphael.  Am. Compl., ECF No. 24, ¶ 7.  Dr. Luchini implanted Defendant's Journey Knee Replacement System as part of that procedure, including a right tibial base plate size nine component with a right femur size seven component, and a left tibial base plate size five component with a left femur size six component.  *Id.*  More than eleven years later, on November 16, 2020, Plaintiff underwent a revision surgery on his right knee "due to premature loosening and failure of defendant's Journey Knee Replacement System."  *Id.* ¶ 8.  As part of this revision, "the tibial baseplate was removed, replaced, and noted to be 'unstable' with a 'short post' causing damage to the patellar tendon."  *Id.*

Plaintiff alleges that the Journey Knee Replacement System and component parts implanted as part of his bilateral knee replacement were "designed, manufactured, remanufactured, tested and/or sold" by Defendant, and that Defendant was and is a "product seller" as defined by Conn. Gen. Stat. § 52-572m.  *Id.* ¶¶ 9–10.

Defendant previously filed a motion to dismiss Plaintiff's original complaint; in response, Plaintiff amended his complaint and Defendant withdrew its motion to dismiss.  *See* Mot. to Dismiss, ECF No. 12; Mot. to Am./Correct Compl., ECF No. 22; Am. Compl., ECF No. 24; Notice by Def., ECF No. 25.  Defendant now asserts that the amended complaint still fails to include the requisite specificity to satisfy the pleading standards.  *See* Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 27 at 2–3.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "'bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions,'" *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)), and "'a formulaic recitation of the elements of a cause of action will not do,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.    DISCUSSION

The CPLA is the "'exclusive remedy for all product liability claims in Connecticut.'" *DiBlasi v. Smith & Nephew, Inc.*, No. 3:20-cv-566 (MPS), 2021 WL 619509, at *2 (D. Conn. Feb. 17, 2021) (quoting *Greco v. Broan-NuTone LLC*, No. 3:17-cv-953 (SRU), 2020 WL 1044002, at *9 (D. Conn. Mar. 4, 2020)); *see also Philadelphia Indem. Ins. Co. v. Lennox Indus., Inc.*, No.

3

3:18-CV-217 (CSH), 2019 WL 1258918, at *2 (D. Conn. Mar. 18, 2019) ("*Lennox 2019*"). Under the CPLA, a plaintiff may assert multiple theories of liability, including strict liability and negligence. *See DiBlasi*, 2021 WL 619509, at *2. Any such claim must assert all elements as required at common law. *Id.* (citing *Philadelphia Indem. Ins. Co. v. Lennox Indus., Inc.*, No. 3:18-cv-217 (CSH), 2020 WL 705263, at *3 (D. Conn. Feb. 12, 2020) ("*Lennox 2020*")).

    A. Strict Liability

Plaintiff proceeds under two strict liability theories: manufacturing defect and design defect. *Mals v. Smith & Nephew, Inc.*, No. 3:19-cv-1770 (VLB), 2020 WL 3270835, at *2 (D. Conn. June 17, 2020) (noting a manufacturer can be held strictly liable for product defects, including those stemming from manufacturing or design, and citing *McConologue v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 93, 99 (D. Conn. 2014)). Such product liability claims, "'whether alleging a design defect [or a] manufacturing defect[,] . . . are governed by the [following] elements . . .: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition.'" *DiBlasi*, 2021 WL 619509, at *2 (quoting *Bifolck v. Philip Morris, Inc.*, 324 Conn. 402, 434 (2016)). "'Even under the liberal pleading standards of Rule 8,'" to state a claim for manufacturing or design defect, "'a complaint generally must identify a specific problem with the design or manufacturing of the subject products.'" *Id.* (quoting *Lennox 2019*, 2019 WL 1258918, at *4).

    *1. Manufacturing Defect*

The Court first holds that Plaintiff has sufficiently stated a manufacturing defect claim.

"A manufacturing defect is 'a flaw in the manufacturing process which causes the product to deviate from the design standards and intended specifications.'" *Karazin v. Wright Med. Tech., Inc.*, No. 3:17-cv-823 (JBA), 2018 WL 4398250, at *3 (D. Conn. Sept. 14, 2018) (quoting *McConologue*, 8 F. Supp. 3d at 109)). To plausibly state a manufacturing defect claim, Plaintiff must plead facts plausibly demonstrating how a part was defective. *See Mals*, 2020 WL 3270836, at *2. Pointing to the knee replacement device as a whole is insufficient; rather, Plaintiff must point to a specific part or component that was allegedly defectively manufactured. *Id.* at *3.

Although it is a close question, the Court concludes that Plaintiff has adequately pleaded a manufacturing defect claim. Plaintiff's amended complaint references the sizes of each of the parts used in his each of his knee replacements and asserts that the tibial baseplate Defendant manufactured and his doctor used in his original right knee replacement was found to be "unstable" and as having a "short post." Am. Compl. ¶ 8. These problems allegedly caused "premature loosening and failure" of Defendant's product, requiring Plaintiff to undergo right knee revision surgery. *Id.* ¶¶ 8, 14, 15, 16. Plaintiff asserts that these findings indicate that the Journey Knee Replacement System "was in a defective condition and unreasonably dangerous to the plaintiff and others in that the tibial plate was inadequate to carry out its functions relative to the implant causing instability and damage to the surrounding tissue including the patellar tendon." *Id.* ¶ 14. Plaintiff further asserts that those parts reached him "without substantial change" and "were not altered or modified in any way by plaintiff or any third party from the condition in which they were manufactured." *Id.* ¶ 12. Taking these allegations as true, as the Court must at this stage, they plausibly suggest that some type of manufacturing flaw resulted in Defendant's product being defective.

Defendant's arguments to the contrary ignore that courts in this district neither "require the plaintiff to possess technical or scientific knowledge about the inner workings of the product . . ." nor expect Plaintiff to have knowledge about the manufacturing process, as in many instances such information is required to be kept confidential due to federal medical device regulations. *Mals*, 2020 WL 3270836, at *3 (cleaned up); *see also Karazin*, 2018 WL 4398250, at *3 ("Though Plaintiffs' complaint undoubtedly would benefit from inclusion of additional facts, the facts Defendant identifies as fatally omitted are precisely the type of facts which are largely within Defendant's control prior to the initiation of discovery and therefore cannot reasonably be expected to be included in the complaint."). *McConologue*, on which Defendant relies, is not factually on all fours. There, the Food and Drug Administration had required the defendant to issue a recall informing consumers of the manufacturing defect that the plaintiff subsequently asserted in his complaint, meaning the plaintiff had access to information not typically available at the pleadings stage. *McConologue*, 8 F. Supp. 2d at 97. In a more typical products liability action, such information will not be available to the plaintiff at the pleadings stage.

The Court concludes that, although additional facts certainly could have been useful, the level of detail included in Plaintiff's amended complaint is sufficient to survive a motion to dismiss. The amended complaint does more than allege that the knee replacement system as a whole was defective, provides sufficient specificity as to which part was allegedly manufactured defectively—the tibial baseplate—and details the harm it caused—instability and damage to the patellar tendon and other surrounding tissue. *See Mals,* 2020 WL 3270836, at *3. As such, Plaintiff's manufacturing defect claim may proceed.

*2. Design Defect*

The Court holds that Plaintiff has plausibly pleaded a design defect claim, as well, though it is an even closer question.

"'[A] design defect claim is predicated on a product which is otherwise properly manufactured, but is nonetheless unreasonably dangerous because its attributes can cause an unexpected injury.'" *DiBlasi*, 2021 WL 619509, at *2 (quoting *Leonard v. Gen. Motors LLC*, No. 3:19-cv-1682 (SRU), 2020 WL 7024906, at *13 (D. Conn. Nov. 30, 2020)). "'A product is defectively designed if: (1) it failed to perform as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner (the "ordinary consumer expectations" test); or (2) in the case of complex products, the risk of danger inherent in the design of the product outweighs its utility (the "modified consumer expectations" test.)'" *Id.* (quoting *Moss v. Wyeth Inc.*, 872 F. Supp. 2d 162, 166 (D. Conn. 2012)). Plaintiff relies solely on the ordinary consumer expectations test. Pl.'s Obj. to Def.'s Mot. to Dismiss Am. Compl., ECF No. 29-1 at 5.

The Court concludes that the amended complaint, while sparse, sufficiently alleges a design defect claim. In particular, it alleges a specific defect in the tibial baseplate, resulting in the baseplate being "inadequate to carry out its functions relative to the implant," and necessitating a revision surgery some years later. Am. Compl. ¶¶ 8, 23. Although the amended complaint fails to allege the average lifespan of a knee replacement device, the Court can reasonably infer that the need for a later revision surgery indicates that the tibial baseplate "'failed to perform as safely as an ordinary customer would expect when used in a reasonably foreseeable manner.'" *DiBlasi*, 2021 WL 619509, at *2 (quoting *Moss*, 872 F. Supp. 2d at 166) (permitting the "reasonabl[e]" inference that the need to revise a knee implant indicates that it "failed to perform as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner"). While the knee

replacement devices in *Mals* and *DiBlasi* failed sooner than the product at issue here, Plaintiff's amended complaint nonetheless alleges a plausible design defect because his device failed, at some point, to perform as safely as a consumer would expect—albeit only barely. Therefore, Plaintiff's design defect claim may proceed. Of course, to the extent discovery reveals that an ordinary consumer would not have expected a knee replacement device to last eleven years when used in a reasonably foreseeable manner, Defendant may renew its arguments in a motion for summary judgment.

B. Negligence

Plaintiff also alleges that Defendant negligently breached its duty where it (1) "manufactured, distributed, sold, and encouraged the combination of the Journey Knee Replacement System" when it knew or had reason to know that system "causes hardware loosening, device failure, and/or the need for early revision surgery"; (2) sold the Journey Knee Replacement System when it knew or should have known the system was "unsafe and unfit for use"; (3) failed to adequately test the Journey Knee Replacement System; (4) failed to recall the Journey Knee Replacement System; (5) "failed to provide proper and adequate instructions to implanting surgeons"; and (6) "failed to properly appraise and/or report the risks and dangers of the Journey Knee Replacement System." Am. Compl. ¶ 32. For the reasons described below, Plaintiff has not alleged sufficient facts—as opposed to conclusory statements—to properly plead a claim for negligence.

A plaintiff asserting negligence claims against a product manufacturer in products liability actions must assert the common law elements of negligence: duty, breach of that duty, causation, and actual harm. *DiBlasi*, 2021 WL 619509, at *3 (citing *Lennox 2020*, 2020 WL 705263, at *6; *Lamontagne v. E.I. Du Pont de Nemours & Co.*, 834 F. Supp. 576, 592 (D. Conn. 1993)). Unlike

8

strict liability products liability claims, however, "'which focus[] on the product itself and finds the manufacturer liable if the product is defective, negligence centers on the manufacturer's conduct.'" *DiBlasi*, 2021 WL 619509, at *3 (quoting *Lennox 2020,* 2020 WL 705263, at *6).  It is not enough to simply state that a party acted negligently; rather, some specific conduct must be asserted, demonstrating how a duty of care was breached.  *See Mals*, 2020 WL 3270835, at *7.

Despite asserting multiple theories of negligence, Plaintiff's amended complaint is devoid of facts regarding any actual conduct by Defendant that allegedly resulted in a breach of Defendant's duty of care to Plaintiff.  Instead, Plaintiff's assertions of negligence amount to mere conclusory allegations.  *See, e.g.*, Am. Compl. ¶ 32.  Regarding Defendant's knowledge and actions, the most specific assertions Plaintiff makes are that Defendant "knew or should have known" certain information about is devices.  *See, e.g.*, *id.* ¶ 32a ("Defendant manufactured, distributed, sold, and encouraged the combination of the Journey Knee Replacement System then it *knew or should have known* that the Journey Knee Replacement System causes hardware loosening, device failure, and./or the need for early revision surgery in patients including the plaintiff.") (emphasis added).  But such assertions are "nothing more than conclusory assertions" and are insufficient to survive a motion to dismiss; they do not demonstrate why or how Defendant knew or should have known of these alleged problems.  *Lennox 2019*, 2019 WL 1258918, at *7.  Plaintiff does not allege, for example, that Defendant was previously informed of these problems in its Journey Knee Replacement System, or received any type of information that would have put it on actual or constructive notice of any issue with their product.  *Id.*  Further, Plaintiff alleges no facts to support his allegations that Defendant failed to adequately test the product at issue or failed to recall the product, after it knew of certain defects.  Plaintiff also alleges nothing about the instructions to implanting surgeons or warnings about the product's dangers, from which the Court

could plausibly conclude that any such instructions or warnings were inadequate. Without such factual assertions, Plaintiff's negligence claim falls short of the pleading standard. Therefore, Plaintiff's negligence claim must be dismissed.

### IV.     CONCLUSION

For the reasons described herein, Defendant's motion to dismiss is DENIED as to Plaintiff's manufacturing and design defect claims and GRANTED as to Plaintiff's negligence claim. Although Plaintiff has already amended his complaint once, he did so without the benefit of the Court's ruling on a motion to dismiss. Therefore, the Court grants Plaintiff leave to amend his negligence claim. Any second amended complaint must be filed by January 3, 2025. If no second amended complaint is filed by that date, the case will proceed as to Plaintiff's strict liability theories of manufacturing defect and design defect only.

**SO ORDERED** at Hartford, Connecticut, this 13th day of December, 2024.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE